### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

# AT GAINESVILLE,

## OCTOBER TERM, 1853.

Present—JOSEPH H. LUMPKIN,
EUGENIUS A. NISBET, } Judges.
EBENEZER STARNES,

---

No. 39.—JOHN N. DAVENPORT and others, plaintiffs in error *vs.* CHARLES B. ALSTON, defendant.

[1.] The Acts of 1841 and 1843, providing, that to every white citizen, the head of a family, a certain amount of land, and a homestead of not more than two hundred dollars in value, shall be secured from levy and sale for his debts, are Acts creating an extraordinary Statutory remedy; and he who claims the benefit of their provisions, must pursue their terms, so far as to have a survey made, as contemplated by the Act of 1841—a value of his improvements assessed; and a designation in writing, to the levying officer, of the boundaries laid off.

[2.] A complainant must aver in his bill all that is necessary to show his title and right to the relief he seeks.

In Equity, from Union Superior Court. Decided by Judge IRWIN, April Term, 1853.

John N. Davenport and others *vs.* Charles B. Alston.

This was a bill filed by John N. Davenport, together with his wife and children, setting forth, that in 1852, he was the owner of a lot of land, containing 160 acres, on which he resided: that in April, 1852, two *fi. fas.* were issued from a Justice's Court against him; and a Constable came to his house, for the purpose of levying them on the land: that he, in the presence and hearing of the Constable, claimed the benefit of the Acts of the Legislature of Georgia, exempting from levy and sale, fifty acres of land, including the homestead, for the benefit of the families of defendants in *fi. fa.*; that the Constable promised complainant that he would not levy on 50 acres, but would levy on the remaining 110; which complainant supposed he had done. It turned out, however, that the entry of levy was made on the whole tract; and that the whole tract was sold in pursuance thereof; and that Charles B. Alston became the purchaser, and received the Sheriff's deed for the whole, and was proceeding to oust complainant and his family from possession. The bill set forth, that the value of the 50 acres of land was not more than two hundred dollars; and prayed an injunction against Alston, and that his Sheriff's deed might be reformed; and that 50 acres of land, including the homestead, might be set apart for the benefit of complainant's wife and children, in terms of the Statute.

To this bill a demurrer was filed, for want of Equity; and also because the complainants had a sufficient remedy at Common Law.

The demurrer was overruled by the Court, and defendant excepted.

AKIN, representing MARTIN & REID, for plaintiffs in error.

UNDERWOOD, for defendant.

*By the Court.*—STARNES, J., delivering the opinion.

[1.] In the year 1841, our General Assembly passed an Act, by which, to every white citizen in the State, the head of

a family was secured twenty acres of land, and the additional sum of five acres for each of his or her children under the age of fifteen, free from levy and sale, under any legal process, founded on contracts made after the first day of May, 1842.— (*Cobb's N. Dig.* 389.) In the year 1843, the Legislature amended this Act, by giving fifty acres to such head of a family, in lieu of the twenty before exempted; this exemption to be founded on contracts made after the 1st of January, 1844. (*Cobb's N. Dig.* 390.) This latter Act, of course, only repealed that portion of the Act of 1841, to which it was repugnant.— All other provisions and requirements of the Act of 1841, are still of force, and the Acts, being *in pari materia*, must be construed together.

One of the provisions of the Act of 1841 is, " That when any head of a family shall own a greater quantity of land than that exempted from levy and sale, by the provisions of the first section of this Act, he or she shall procure the County Surveyor to lay off the number of acres so exempted, so as to include the dwelling and improvements of the original tract, (if there be any thereon); provided that the value of said dwelling house and improvements shall not exceed two hundred dollars—the value to be ascertained and certified by three valuing agents, who shall be appointed as follows." [Here the Act provided for the appointment of such valuing agents.] " And he or she shall designate in writing, to the Sheriff or other officer in whose hands the process directing a levy and sale may be, the boundary so laid off; and it shall not be lawful for such Sheriff or other officer to levy on, or sell the tract so designated."

This requirement of the Act of 1841, is not repealed by the Act of 1843; it is an important feature of the same subject-matter of Legislation, and must control this case.

In regard to the extraordinary Statutory remedy which these Acts provide, the party who claims the benefit of their provisions, must be held to pursue their terms. And if a debtor desires to claim the exemption by them provided, he must do

VOL. XIV. 35.

what they require of him, in order to have the benefit of such exemption.

No compliance with the requirements of the Act of 1841, on the part of John N. Davenport, is shown by the bill. It is true, that he obtained from the levying officer, the promise not to levy on fifty acres of his land; and the levy on fifty acres thereof, may have been afterwards entered by that officer through mistake, as is alleged. But this cannot aid the complainants, if Davenport did not comply with the requirements of the Act, in having a survey made, as required; a value of his improvements assessed; and a designation in writing, to the levying officer, of the boundaries laid off.

It was insisted, that the Act contemplated subsistence for the family, independent of the rights of the head thereof—that they were parties to this bill; and that they ought not, by acts for which they were not responsible, to be deprived of their rights.

The Act does, indeed, contemplate relief to the family of the debtor; but it puts their right to such relief, upon *his* compliance with its requirements. It could not do otherwise, legally or justly; for it might be, that the debtor did not think it right to have such provision made for his family—they might be otherwise provided for; and he might not desire to have this exemption made on their account. If so, it is very certain that it could not be made; for the Legislature has no constitutional power to take from a man, (and taking it from the payment of his debts, is taking it from him) any portion of his land, for the benefit of his family, *without his consent.*

This Act provides the method by which such consent is to be manifested. If it be not so expressed, his title is not divested; and when this land was levied on and sold, the purchaser took that title. And neither the debtor nor his family have any legal or equitable claim upon the land, as against that purchaser.

The demurrer, therefore, should have been sustained.

[2.] It may be added, that this bill does not otherwise make a case for the interposition of the Court. There is no allega-

The Rome R. R. Co. *vs.* The Mayor and Council of Rome.

tion that the debt on which the sale was made, was contracted subsequently to January, 1844.    There is an averment, that it was of date subsequent to May, 1842.    But the benefit of the exemption provided by the Act of 1843, is claimed; and this can only be had, on contracts subsequent in date to 1st January, 1844.

Neither  does this bill aver  that  the debt on which the sale was made, was not founded on the purchase money of the land. By the Act of 1843, no such exemption can be had, on account of  a debt founded on such purchase money ;  and the bill which sought the aid of this Statute for the complainants,  should,  by proper averments, have  shown  that  they were  entitled to the equities provided by it.    All that is stated in  this bill  may be true, and  yet the  complainants may not be entitled to relief; because the debt was contracted for the purchase money.·

A complainant must aver in his bill, all  that is  necessary to show his  title and  right to the relief he seeks.    (1 *Danl. Ch. Prac.* 416.    *Mitford,* 126.)

Let the judgment be reversed.